# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD WILLIAMS, | : | CIVIL NO. 1:13-CV-387 |
| Plaintiff, | : | (Judge Rambo) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| WAYNE GAVINS, et al., | : | |
| Defendants. | : | |

# REPORT AND RECOMMENDATION

## I.  Statement of Facts and of the Case

This is a civil rights action brought by a state inmate, Ronald Williams, who claims that the defendants, state correctional officials, used cell searches to retaliate against him and wrongfully interfere with his right of access to the courts. (Doc. 1.) The defendants have moved to dismiss Williams' complaint, (Doc. 11), arguing that Williams' pleading is fatally defective because Williams has not fully exhausted his administrative remedies as required by law before proceeding in federal court. (Id.) While the defendants' motion to dismiss raises this straightforward legal claim, it presents the claim against a highly disputed factual backdrop.

For their part, the defendants present this exhaustion claim as a legal defense which rests on an immutable fact–Williams has not exhausted his administrative remedies within the prison system. (Docs. 11 and 12.) In contrast, Williams presents a more subtle, complex and controversial factual thread, both in his complaint and in

his response to this motion to dismiss. According to Williams, in August of 2012, as part of an effort to informally resolve this dispute, he wrote directly to the Secretary of the Department of Corrections, John Wetzel, and to the Department of Corrections, Office of Special Investigations, seeking an investigation into the matters which he was alleging regarding retaliatory cell searches. (Doc. 6, Exs. 3 and 5.) Williams contends that on August 22, 2012, shortly after mailing these letters, he was contacted by the Deputy Superintendent at SCI Waymart, who allegedly informed Williams that, due to the on-going investigation instigated at his request, prison officials at the institution were unable to address his problems. Instead, Williams avers that he was informed that any resolution of his concerns would have to come through Secretary Wetzel and the Special Investigations review process, (Docs. 6 and 13.), allegations which we understand the defendants deny.

Thus, the instant motion to dismiss presents a straightforward legal question regarding the exhaustion requirement in prison litigation, but poses that question against the background of a highly disputed and contested factual record. Given these disputed, and material, questions of fact it is submitted that this motion to dismiss should be denied without prejudice to resolution of this question by the court at a later date, either on a summary judgment motion or following an evidentiary proceeding.

## II. Discussion

### A. Motion to Dismiss–Standard of Review

A motion to dismiss is designed to test the legal sufficiency of a complaint. Thus, Rule 12(b)(6) of the Federal Rule of Civil Procedure provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting

Twombly, 550 U.S. at 555). Thus, "[a]t the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements. See Iqbal, 556 U.S. at 678–79, 129 S.Ct. 1937; Twombly, 550 U.S. at 555–57, 127 S.Ct. 1955; Burtch, 662 F.3d at 220–21." James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012).

As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

Thus, in assessing a motion to dismiss the court engages in a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a

claim.'" Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely

on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

> **B. At This Time Disputed Factual Issues Preclude The Court from Reaching a Judgment as a Matter of Law Regarding Whether Williams Failed to Properly Exhaust His Administrative Remedies**

In this case, the defendants urge the Court to dismiss the plaintiff's claims because Williams has failed to timely exhaust the administrative remedies available to him. Williams, in turn, has countered this defense claim by asserting that corrections officials frustrated his efforts to exhaust his claims by informing him that any action of his grievances would have to be deferred pending completion of an internal investigation instigated by Williams.

This dispute, which comes before the Court on an incomplete factual record, is critically important because Williams' alleged failure to timely pursue these administrative remedies can have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1197e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made here. See Spruill v. Gillis, 372 F.3d

218 (3d. Cir. 2004); <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal

procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x. 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x. 178 (3d Cir. 2006). This requirement of strict adherence to the timetables prescribed by prison grievance policies is compelled by the important policies underlying the PLRA. As the Supreme Court has noted: "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function

effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

This broad rule admits of one, narrowly defined exception. If the actions of prison officials directly caused, or contributed to, the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d. Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra, 49 F.App'x at 368. Many of these claims arise in the context presented here: allegations that an internal Department of Correction investigation stymied any inmate efforts to utilize the prison grievance system. See also, Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir.2000) (exhaustion requirement met

where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, was impeded in filing a timely grievance, or some other extraordinary circumstances intervened and prevented compliance with the grievance process, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F.App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. Davis v. Warman, 49 F.App'x 365, 368 (3d Cir. 2002). Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

In this case, a straightforward application of the filing deadlines set forth in the Department of Corrections grievance policy suggests that the PLRA's exhaustion requirement has not been fully met here. Therefore, Williams can avoid dismissal of this claim on exhaustion grounds only if he can carry his burden of proof on his assertion that he was misled by corrections officials, was impeded in filing a timely grievance, and was unable to timely file this grievance due to some other extraordinary circumstances. Williams may be able to meet this burden if he can show that his efforts at exhaustion were stymied or frustrated due to an on-going internal affairs investigation of alleged wrongdoing. See also, Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir.2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

While this is an exacting burden which Williams must ultimately meet, at this time there are unresolved, threshold factual questions which prevent us from reaching any final conclusions regarding whether this exhaustion requirement has been satisfied, or should be excused. Williams has alleged that he wrote directly to the Secretary of the Department of Corrections, John Wetzel, and to the Department of

Corrections, Office of Special Investigations, seeking an investigation into his allegations regarding retaliatory cell searches. (Doc. 6, Exs. 3 and 5.) Williams contends that, after mailing these letters, he was contacted by the Deputy Superintendent at SCI Waymart, who allegedly informed Williams that, due to an on-going investigation instigated at his request, prison officials at the institution were unable to address his problems. Instead, Williams avers that he was informed that any resolution of his concerns would have to come through the Special Investigations review process. (Docs. 6 and 13.)

These assertions, if true, could excuse this failure to fully exhaust administrative remedies. See, e.g., Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance). At a minimum, these unresolved questions create a factual dispute which precludes resolution of this claim on a motion to dismiss at this time. Indeed, where there are factual questions concerning the extent to which an inmate's efforts to exhaust his grievances were impeded or delayed by the actions of prison officials, judgment in favor of the defendants as a matter of law on the pleadings clearly is not appropriate.

See, e.g., Knauss v. Shannon, No. 08-1698, 2010 WL 569829 (M.D. Pa. Feb. 12, 2010); Born v. Monmouth County Correctional Institution, No. 07-3771, 2008 WL 4056313 (D.N.J. Aug. 28, 2008).

Instead, we are cautioned that disputed factual issues relating to exhaustion should be decided by the court only after a full consideration of the contested proof. As the United States Court of Appeals for the Third Circuit has recently observed in this regard:

> Under the PLRA, exhaustion is a precondition for bringing suit under § 1983. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions ... *until* such administrative remedies as are available are exhausted." (emphasis added)). As such, just as subject-matter jurisdiction, personal jurisdiction, and venue, exhaustion is a "threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time." Dillon, 596 F.3d at 272 (emphasis added); see Pavey, 544 F.3d at 741 ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to."); cf. McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (likening the doctrine of exhaustion of administrative remedies to "abstention, finality, and ripeness-that govern the timing of federal-court decisionmaking"); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51 n. 9, 58 S.Ct. 459, 82 L.Ed. 638 (1938) (describing exhaustion as a "rule of judicial administration"). Those of our sister circuits to have considered the issue have held that a plaintiff in a lawsuit governed by the PLRA is not entitled to a jury trial on the issue of exhaustion. See Messa v. Goord, 652 F.3d 305, 308–09 (2d Cir.2011); Dillon, 596 F.3d at 272; Pavey, 544 F.3d at 742; Bryant v. Rich, 530 F.3d 1368, 1373–77 (11th Cir.2008); Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir.2003). No court has held, . . . , that decision of that issue implicates Seventh Amendment rights. As we have already suggested, it is of no consequence that here, as is often the case, there are disputed facts that must be resolved in order

to determine whether the claims were exhausted. See Bryant, 530 F.3d at 1373–74 (holding the district court properly acted as fact finder in resolving conflicting evidence that raised a genuine issue of material fact about whether administrative remedies were available to the prisoner plaintiffs); accord Messa, 652 F.3d at 309; Dillon, 596 F.3d at 271. Matters of judicial administration often require judges to decide factual disputes and the Seventh Amendment is not implicated as long as the facts are not bound up with the merits of the underlying dispute. See Messa, 652 F.3d at 310 ("The Seventh Amendment does not promise a jury trial on all issues that might, as a practical matter, finally dispose of a case. Rather, it guarantees the right to a jury's resolution of the merits of the ultimate dispute." (citing Markman v. Westview Instruments, 517 U.S. 370, 377, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) and In re Peterson, 253 U.S. 300, 309–10, 40 S.Ct. 543, 64 L.Ed. 919 (1920))); see also Alliance for Envtl. Renewal v. Pyramid Crossgates Co., 436 F.3d 82, 87–88 (2d Cir.2006). . . . . In sum, we agree with the Second, Fifth, Seventh, Ninth, and Eleventh Circuits and hold that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.

Small v. Camden Cnty., 11-2378, 2013 WL 4504761 (3d Cir. Aug. 26, 2013)(footnotes omitted).

These principles control here and compel the outcome with respect to this motion to dismiss. At present, disputed issues of material fact prevent us from reaching any final conclusions on the question of whether Williams timely exhausted his administrative remedies. Therefore, it is recommended that this motion to dismiss be denied without prejudice to the renewal of this claim on a more complete factual record, either on a summary judgment motion or following an evidentiary proceeding.

### III. Recommendation

For the reasons set forth above, IT IS HEREBY RECOMMENDED THAT defendant's motion to dismiss, (Doc. 11.), be denied without prejudice to the renewal of this claim on a more complete factual record.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3d day of September 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge