**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RONALD C. WILLIAMS,** | : | **Civil No. 1:13-CV-387** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **WAYNE J. GAVINS, LT.** | : | |
| **HORVATH, C.O. DREVENEK,** | : | |
| **C.O. T. O'BRIEN, C.O. HUGHES,** | : | |
| | : | |
| **Defendant** | : | |

**REPORT AND RECOMMENDATION**

## I.   INTRODUCTION

The plaintiff in this action, Ronald C. Williams, is an inmate in the custody of

the Pennsylvania Department of Corrections, currently housed at the State

Correctional Institution at Waymart ("SCI-Waymart"). During his imprisonment, Mr.

Williams has demonstrated himself to be a litigious inmate, and this lawsuit is in fact

borne out of a separate civil action that Williams was litigating against separate

corrections officials.[1] In the instant action, Williams has brought suit against Wayne

---

[1] That separate civil action is captioned Williams v. Nish, M.D. Pa. Docket
No. 1:11-CV-0396 ("Nish"). In that action, Williams, who practices the Native
American religion and participates in Native American religious ceremonies at
SCI-Waymart, sued several corrections officials, alleging that they violated the

J. Gavins, the Superintendent of SCI-Waymart, Lieutenant Horvath, and three corrections officers at SCI-Waymart, alleging that these defendants violated his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution by conducting retaliatory cell searches and tampering with Williams's legal documents, notes and memoranda that he was maintaining in his cell and using to litigate his claims in Nish. Essentially, the plaintiff is claiming that the defendants utilized cell searches and other custodial tactics that were intended to interfere with his right of access to the courts, to retaliate against him for exercising his right to bring a civil action, and by damaging his personal property.

After a period of fact discovery that was marked by disputes raised by both parties, including the plaintiff's inexplicable refusal to participate in depositions that he had scheduled, the defendants have moved for summary judgment on the plaintiff's claims. (Doc. 66.) The motion is fully briefed, and following our review of the briefs and the record developed by the parties, we conclude that the plaintiff's

---

Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000-cc. Specifically, the remaining claims in that case relate to Williams's allegations that Native American prayer and smudging ceremonies are being held outdoors in cold or adverse weather conditions, or otherwise being cancelled or disallowed indoors. In addition, Williams has claims relating to the replacement of the "Three Sisters," which are seeds that are ceremonial relics in the Native American religion. (Id. at Doc. 16 ¶¶ 9, 13 and Doc. 60, 68.) The district court stayed litigation in that action pending a disposition of the motion for summary judgment pending in the instant action. (Doc. 107.)

claims fail for lack of proof and otherwise as a matter of law.  Despite showing considerable ability as a litigant, and occasionally a studious attention to details, the plaintiff has nonetheless failed to come forward with evidence to controvert the defendants' well-supported statement of material facts in this case, something that is fundamental importance when defending against a well-supported motion for summary judgment.  In light of the plaintiff's failure to contest numerous facts with contradictory evidence, and which are effectively unchallenged, and the failure to support his claims in any substantial way, we will recommend that the motion for summary judgment be granted and the case closed.

## II.   <u>PROCEDURAL BACKGROUND</u>

The plaintiff initiated this action by filing a complaint on February 14, 2013. (Doc. 1.) That pleading has never been amended and remains the plaintiff's operative pleading in this litigation.  In the complaint, the plaintiff acknowledges that he did not file grievances in accordance with Department of Corrections policy relating to the claims in this case, but he nevertheless maintains that his failure to follow the grievance procedure should be excused because he "surpassed the criteria of a submitted complaint" by seeking administrative relief in a variety of other ways, including correspondence to the federal judge overseeing his related litigation, and Secretary of the Department of Corrections and other officials.  (<u>Id.</u> at 2-3.)

In terms of his substantive claims, Williams contends that the named defendants interfered with his right of access to the courts, and materially interfered with his parallel litigation in Civil No. 1:11-cv-396, by "stir[ring], read[ing], scatter[ing], and destroy[ing]" the plaintiff's legal paperwork, which they did under the guise of routine searches of inmate cells. (Doc. 1, at 3.) The plaintiff has alleged that by doing so, the defendants retaliated against him for his exercise of protected First Amendment activity and denied him due process of law.

## III.   **STANDARD OF REVIEW**

The defendants have moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence.  Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider

all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

It is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant],

as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.  Under the Local Rules, the failure to follow these instructions  and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement.  This Local Rule serves several purposes.  First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute.  Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.'  477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis).  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties.  <u>See</u> <u>Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11

(M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## IV.   DISCUSSION

### A.   The Prison Litigation Reform Act

The Prison Litigation Reform Act, 42 U.S.C. § 1997 ("PLRA") requires that prisoners present their claims through an administrative grievance process prior to seeking redress in federal court.  Specifically, the Act provides that:

> No action shall be brought with respect to prison conditions under [§ 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  In accordance with the PLRA, prisoners must comply with exhaustion requirements with respect to any claim that arises in the prison setting, regardless of the type of claim asserted, or the relief sought.  See Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").

As the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory. See Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)). Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden County, 728 F.3d 265, 270-71 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).

Moreover, the exhaustion requirement of the PLRA is one of "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 84 (2006). Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted. Id. at 90; Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004). An inmate cannot circumvent the PLRA's exhaustion requirement by failing to properly exhaust the prison's administrative review process, or by waiting until such remedies are no longer available to him. Woodford, 548 U.S. at 95. Proper exhaustion of a grievance means that a prisoner must refrain both from acting too soon or waiting until it is too late to act. Thus, "[a]n 'untimely or otherwise

9

procedurally defective administrative grievance or appeal' does not satisfy the mandatory exhaustion requirement of the PLRA.  Woodford v. Ngo, 548 U.S. 81, 83, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); see also Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir.2004)."  Barrick v. Prison Health Sys./Med., 335 F. App'x 153, 155 (3d Cir. 2009).  Similarly, the procedural default component of the PLRA's proper exhaustion requirement does not permit "the filing of a suit before administrative exhaustion, however late, has been completed."  Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002) citing Perez v. Wis. Dep't of Corr., 182 F.3d 532, 534–35 (7th Cir.1999) (observing "Congress could have written a statute making exhaustion a precondition to judgment, but it did not.  The actual statute makes exhaustion a precondition to *suit*"); Neal v. Goord, 267 F.3d 116, 122 (2d Cir.2001) (holding that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after filing her complaint in federal court).  Accord Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C.Cir.2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir.1999); Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir.1998); Garrett v. Hawk, 127 F.3d 1263, 1265 (10th Cir.1997).  However, if an inmate shows that the actions of prison officials directly caused the inmate's procedural default of a grievance, the inmate will not be held to strict compliance with the exhaustion requirement.  Brown v. Croak, 312 F.3d 109, 112-13.  Likewise, "[w]here [the

inmate] failed to receive even a response to the grievances addressing the . . . incidents, much less a decision as to those grievances, the [administrative remedy] process was unavailable to him." Small v. Camden County, 728 F.3d. at 273.

B.   **Department of Corrections' Policy DC-ADM 804**

The Department of Corrections maintains a grievance system that offers inmates a three-phase grievance and appeals procedure. See DC-ADM 804; see also 37 Pa. Code § 93.9(a). Pursuant to DC-ADM 804, inmates must first file grievances with the Facility Grievance Coordinator at the facility where the events upon which the complaint is based occurred. If the inmate is dissatisfied with the initial review of his grievance, he may appeal the decision to the Facility Manager (Superintendent). Upon receiving a decision from the Superintendent, the inmate may file an appeal with the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within 15 working days of the Superintendent's decision. Id.

C.   **Williams Failed to Exhaust any Grievance Related to the Claims Brought in this Action**

At the outset of the complaint, the plaintiff acknowledged the existence of the DOC inmate grievance system, and its availability to him. More importantly, he conceded that he failed to exhaust his available administrative remedies prior to bringing this lawsuit. (Doc. 1, at 2-3.) Thus, Williams filed no grievances regarding the allegations brought in the complaint, and he has admitted as much. (Id.; Def.

11

SMF ¶¶ 49-57.)  The plaintiff attempts to circumvent this critical issue by explaining that although he did not utilize the DOC grievance process, he nevertheless brought his concerns to the attention of the court that was presiding over the litigation with which he claims the defendants were interfering, and that he wrote correspondence to the Secretary of the Department of Corrections as well as other officials who would have been empowered to investigate his claims.  In the plaintiff's judgment, he "surpassed the criteria of a submitted complaint in the form of a grievance and received answers from involved parties concerning said complaint." (Doc. 1, at 2-3.)

The plaintiff thus seems to be suggesting that he need not comply with the DOC's established grievance process, so long as he makes his complaints known to corrections officials in a manner of his choosing.  This is not acceptable and simply does not comply with the PLRA's requirements of complete exhaustion in accordance with the procedures established by the Pennsylvania Department of Corrections.  As the foregoing legal summary reveals, the plaintiff's failure to comply with the exhaustion process violates the bright-line rule of the PLRA that requires full and proper administrative exhaustion in compliance with the official procedures available to all inmates.  The plaintiff's admitted failure to adhere to this process now operates to bar his claims in this litigation, and summary judgment is warranted for this reason alone.

### D. Williams's Failure to Properly Dispute the Defendants' Supported Statement of Undisputed Facts Results in Many of those Facts Being Deemed Admitted

In support of their motion for summary judgment, the defendants complied with Local Rule 56.1 by filing a statement of facts that they asserted were undisputed, supported by citation to evidence of record. (Doc. 69.) Local Rule 56.1 also requires that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried." LR 56.1. Failure to comply with this rule has real consequences for litigants, since "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Id.

The defendants' statement of material facts consists of 58 paragraphs, and is accompanied by reference to evidence of record that is offered to substantiate those factual averments.[2]  In response, the plaintiff filed a document that purports to raise

_____

[2]  The defendants' statement of facts is straightforward and is supported by record citation, and a detailed recitation of the facts stated therein is unnecessary to this report.  (Doc. 69.)  In summary, the statement outlines DOC policies with respect to inmate property; addresses prison policy with respect to searches of inmate cells and property; addresses the plaintiff's permitted possession of excess

issues only with respect to paragraphs 2-4, 10, 13, 18, 33-40, and 56-58.  However, the plaintiff failed to offer any substantive response to the remaining paragraphs, and thus the facts asserted in paragraphs 1, 5-9, 11-12, 14-17, 19-32, and 41-55 should be deemed admitted.

But even where the plaintiff has purported to dispute the defendants' statement of fact in discrete paragraphs, he has largely failed to refer the Court or the defendants to any evidence that supports his position.  This is the case with respect to paragraphs 3, 13, 18, 34, 36-40, and 58.  However, Local Rule 56.1 requires more of a party than to simply contest an asserted fact that has been properly supported with evidence; the nonmoving party must show that there exists evidence in the record that places the asserted fact in dispute.  The plaintiff has not done so in this case, and thus has failed to provide any evidentiary basis for his purported denial of the facts set forth in the foregoing paragraphs.  Straightforward application of Local Rule 56.1 thus causes these facts also to be deemed admitted.  Furthermore, we have undertaken a thorough

---

property to litigate certain legal matters he had pending; summarizes the plaintiff's litigation in Nish; and provides a summary of the plaintiff's dispute with his jailers over their searches of his property and limitations that they placed upon both the amount of such property that he could permissibly keep, and the manner in which such property could be maintained.  (Id. ¶¶ 1-48.)  The statement also addresses the plaintiff's familiarity with the grievance procedure available within the DOC, and makes clear that although the plaintiff complied with that procedure in other instances, he did not do so with respect to the claims in this case.  (Id. at ¶¶ 49-57.)

review of the evidence actually tendered by the parties in this matter, and find that the defendants' factual assertions in the foregoing paragraphs have ample support, and thus the plaintiff's failure to contest these facts meaningfully now significantly undermines his position.

The defendants further argue that the plaintiff has failed to dispute the facts asserted in paragraphs 2, 4, 10, 33, 35, and 56-57, because he cites to irrelevant portions of the record.  We are not entirely persuaded by this argument in all instances, but it ultimately is unnecessary to engage in a paragraph-by-paragraph analysis regarding each of these evidentiary issues, since the plaintiff manifestly has not come forward with sufficient evidence to support his claims for First Amendment retaliation, due process violations, and violation of his right of access to the courts, as discussed below.

### E.  The Plaintiff Has Failed to Show that the Defendants Retaliated Against Him

A cornerstone of the plaintiff's complaint in this case is his claim that the defendants' cell searches, and their seizure of certain property, were conducted in retaliation for his lawsuit in <u>Nish</u>.  However, the record fails to provide adequate support for this claim, and the plaintiff has not identified evidence showing a causal link between his litigation in <u>Nish</u> and the cell searches that were conducted.

Moreover, the undisputed evidence shows that Williams would have been subjected to searches regardless of whether he had filed a lawsuit against prison staff.

"Retaliation for the exercise of a constitutional right is itself a violation of rights secured by the Constitution actionable under section 1983." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  In Allah v. Seiverling, the Third Circuit Court of Appeals held that, "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." 229 F.3d at 224-25 (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)).  Accordingly, the law of this Circuit is clear that a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied.  Id. at 225.

A prisoner claiming that prison officials have retaliated against him for exercising his rights under the First Amendment must prove that:  (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 200)).  An adverse action is one sufficient to deter a person of ordinary firmness from exercising his rights. Allah v. Seiverling, 229 F.3d 220, 225

(3d Cir. 2000); see also Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Rauser

v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001)).  The crucial third element, causation,

requires a plaintiff to prove either (1) an unusually suggestive temporal proximity

between the protected activity and the allegedly retaliatory action, or (2) a pattern of

antagonism coupled with timing to establish a causal link.  See Lauren W. ex rel. Jean

W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer

Co., 126 F.3d 494, 503-04 (3d Cir. 1997)).

Moreover, when examining these causation issues, we are specifically

admonished that:

> A court must be diligent in enforcing these causation requirements
> because otherwise a public actor cognizant of the possibility that
> litigation might be filed against him, particularly in his individual
> capacity, could be chilled from taking action that he deemed appropriate
> and, in fact, was appropriate.  Consequently, a putative plaintiff by
> engaging in protected activity might be able to insulate himself from
> actions adverse to him that a public actor should take.  The point we
> make is not theoretical as we do not doubt that public actors are well
> aware that persons disappointed with official decisions and actions
> frequently bring litigation against the actors responsible for the
> decisions or actions in their individual capacities, and the actors surely
> would want to avoid such unpleasant events.  Thus, it would be natural
> for a public actor to attempt to head off a putative plaintiff with the
> unwarranted expenditure of public funds.  Courts by their decisions
> should not encourage such activity and, by enforcing the requirement
> that a plaintiff show causation in a retaliation case, can avoid doing so
> as they will protect the public actor from unjustified litigation for his
> appropriate conduct.  In this regard we recognize that often public actors
> such as those in this case must make a large number of decisions in

charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267-68 (3d Cir. 2007).

Once a plaintiff has made a *prima facie* case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter, 292 F.3d at 158. When analyzing a retaliation claim, courts are to bear in mind that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

Applying the foregoing legal guidelines together with the prevailing pleading standards applicable in federal court, we conclude that the plaintiff has failed to come forward with sufficient evidence to support his claims.

As a threshold matter, it is questionable whether the plaintiff has in fact shown that he suffered adverse action. To the extent the plaintiff is suggesting that he was privileged to be free from unwanted searches of his prison living space, we disagree. Prisoners do not have a protected privacy interest in their prison cells or in the personal property that they maintain in their cells. See Hudson v. Palmer, 468 U.S. 517, 528-29 (1984); Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001) ("[T]he Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally

18

inconsistent with incarceration . . . .   Therefore, 'the Fourth Amendment has no applicability to a prison cell.'") (quoting <u>Hudson</u>, 468 U.S. at 536).

However, even assuming that in some cases a cell search may constitute retaliation if undertaken in order to harass or retaliate against an inmate for bringing a lawsuit against other prison staff, the plaintiff has not effectively rebutted the defendants' supported assertion that the cell searches were either routine or were undertaken because the plaintiff was in possession of excess property.

The plaintiff has complained about seven separate searches. (Doc. 1 at ¶¶ 2-8.) Notably, with respect to a search conducted on July 25, 2012, the plaintiff has admitted that none of the defendants was involved in the search. (Def. SMF ¶ 26; Doc. 1 ¶ 3.) The evidence shows that the searches performed on September 23, 2011, and November 1, 2011, were routine searches. (Def. SMF ¶¶ 18, 23.) A subsequent search, on August 8, 2012, was conducted as part of an institution-wide shakedown. (Def. SMF ¶ 30.) The evidence is undisputed that routine searches and institution-wide shakedowns are conducted as a part of standard operations at SCI-Waymart, and the plaintiff has not suggested otherwise. (Def. SMF ¶¶ 18, 30.)

Three other searches in August 2012 were performed as investigative searches because the plaintiff had excessive personal property in his cell. (Def. SMF ¶¶ 32-34, 37-38.)   The plaintiff's mere insistence that the searches were conducted for

retaliatory reasons finds no evidentiary support, and indeed no support other than the plaintiff's own subjective interpretation of the reason for each search, which is insufficient at the summary judgment stage of litigation.

Moreover, the plaintiff does not adequately point to evidence that could support a finding of a causal link between his litigation in <u>Nish</u> and the complained-of searches, many of which were conducted many months after this litigation was initiated. The plaintiff again relies upon his own subjective view of the basis for each of the searches in order to support his speculative conclusion that his litigation activity in another case against prison officials inspired each of the cell searches at issue in this case, many of which were routine or institution-wide, and the remainder undertaken because the plaintiff was persistently running afoul of institutional rules regarding the amount of personal property he could maintain in his cell.

This dovetails with another reason why summary judgment is appropriate on the plaintiff's retaliation claims: the unchecked evidence indicates that the defendants had an adequate and independent basis for each of the challenged searches, and that these searches would have been undertaken regardless of whether the plaintiff was involved in litigation, as part of a legitimate penological interest, including routine cell searches and institution-wide shakedowns aimed at prison security, or searches conducted when it was discovered that the plaintiff has more

property in his cell than was permitted under DOC guidelines. The evidence shows that routine cell searches, including random searches of every inmate and his property, are conducted multiple times every year as part of the standard operations at SCI-Waymart. (Def. SMF ¶ 18.) Additionally, the evidence shows that routine shakedowns are part of regular institutional practice at the prison. (Def. SMF ¶ 30.) During such searches, every inmate and their property are searched. (Def. SMF ¶ 30.) The plaintiff has not pointed to evidence that could conceivably show that these searches were motivated by the plaintiff's litigation activity.

The evidence shows that the remaining searches were performed because the plaintiff had excess property in his cell. Thus, the August 14, August 22, and August 23, 2012, cell searches were conducted for this reason. (Def. SMF ¶¶ 34, 37.) The plaintiff has failed to cite to sufficient evidence to support his claims that each of these searches was undertaken out of retaliatory animus; in contrast, the defendants cite to evidence supporting their assertion that every complained-of search was undertaken for legitimate penological reasons.

### F.     The Plaintiff's Due Process Claims Fail Because He Had a Meaningful Post-Deprivation Remedy Available to Him

The plaintiff has also brought a due process claim based upon his claim that the defendants deprived him of his personal property that was seized or damaged during the cell searches. This claim fails, however, because even "an unauthorized

21

intentional deprivation of property" by prison officials will not violate the Due Process Clause "if a meaningful post-deprivation remedy for the loss is available." Hudson, 468 U.S. at 533 (citing Parratt v. Taylor, 451 U.S. 527 (1981)). Stated differently, "[a] prisoner's due process claim based on a state actor's unauthorized deprivation of property is not actionable under § 1983 unless no adequate post-deprivation remedy is available." Mattis v. Dohman, 260 F. App'x 458, 461 (3d Cir. 2008). This rule is borne out of recognition that the due process rights of prisoners in property may be accommodated to a prison's legitimate security needs. See Bell v. Wolfish, 441 U.S. 520, 558-60 (1979).[3] The Third Circuit has routinely found that

---

[3] There are some cases where the state may be required to provide inmates with pre-deprivation notice, but only where such notice is practical and can be meaningful. See Montanez v. Secretary, Pa. Dep't of Corr., – F.3d –, 2014 WL 5155040 (3d Cir. Aug. 15, 2014). Thus, "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." Id. at *7 (quoting Zinermon v. Burch, 494 U.S. 113, 132 (1990)). The Third Circuit has thus required such notice in cases involving state action that would deprive inmates of the funds in their inmate accounts pursuant to an established state procedure. Id.; Burns v. Pa. Dep't of Corr., 642 F.3d 163, 171-73 (3d Cir. 2011). The general rule, then, is "when pre-deprivation process could be effective in preventing errors, that process is required." Montanez, – F.3d –, 2014 WL 5155040, at *8. In this case, however, where the alleged interference with the plaintiff's property occurred in connection with cell searches conducted for security purposes, no pre-deprivation notice was required and, indeed, would have undermined the institution's interests in conducting routine searches, institution-wide shakedowns, or security searches. See Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 421 (3d Cir. 2000) ("But where the State must take quick action, or where it is impractical to provide meaningful predeprivation process,

inmates have adequate post-deprivation remedies available to them under state tort law and the prison grievance process.  See Pressley v. Huber, 2014 WL 1329139 (3d Cir. April 4, 2014) (citing 42 Pa. Cons. Stat. Ann. § 8522(a), (b)(3); Tillman, 221 F.3d at 422.  In this case, it is undisputed that the plaintiff had both of these remedies available to him, and the existence of these remedies and their availability to the plaintiff causes his due process claims to fail as a matter of law.

### G.      The Defendants Did Not Interfere with the Plaintiff's Access to the Courts

The plaintiff has also claimed that the defendants interfered with his right of access to the courts, but he has alleged few facts to help clarify such a claim, and in any event the evidence of record does not provide support this claim.

It is well-established that under the First and Fourteenth Amendments, prisoners have a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817, 821 (1977).  In order to state a claim for denial of this right, a plaintiff must allege (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that the conduct deprived him of his right of access to the courts.  Cash v. Wetzel, – F. Supp. 2d. – ,  2014 WL 1244048, *9 (E.D. Pa. Mar. 25, 2014).  The right of access to the courts must be adequate, effective and meaningful

---

due process will be satisfied by a meaningful postdeprivation remedy.").

and must be freely exercisable without hindrance or fear of retaliation. <u>Milhouse v.</u> <u>Carlson</u>, 652 F.2d 371, 374 (3d Cir. 1981).

However, in order to pursue a claim for denial of access to the courts, an inmate must allege and show actual injury, "such as the loss or rejection of a legal claim." <u>Oliver v. Fauver</u>, 118 F.3d 175, 177 (3d Cir. 1997) (citing <u>Lewis v. Casey</u>, 518 U.S. 343 (1996)). It is here that the plaintiff's claim fails; indeed, he has not even alleged that he lost the ability to pursue any non-frivolous, arguably meritorious claim as a result of the defendants' actions. <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002); <u>see also</u> <u>Monroe v. Beard</u>, 536 F.3d 198, 205 (3d Cir. 2008) (noting that in order to make out an access-to-courts claim, "prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'") (quoting <u>Harbury</u>, 536 U.S. at 416-17).

The plaintiff's failure to adequately articulate "underlying arguable claim" that he contends he lost or that was prejudiced by the defendants' actions, and his failure to describe the "lost remedy" that resulted, is further compounded by a lack of evidence to support these claims. The record does not demonstrate that the plaintiff suffered any evident prejudice in the <u>Nish</u> litigation, or in this case. The docket in <u>Nish</u> reveals that the plaintiff has had access to the court to present his claims and has

litigated his claims competently in that case, which has now been stayed pending disposition of this action – another case where the plaintiff's right of access to the court would seem to have been unfettered by any interference of the defendants. The paucity of the factual allegations and the lack of evidence to support this particular claim now compels entry of summary judgment.

### H.   Defendant Gavin Lacked Personal Involvement and, Therefore, Cannot Be Liable for the Claims Asserted

Lastly, we note that in addition to the other substantive reasons to grant the defendants' motion, summary judgment is also warranted with respect to the plaintiff's claims against Superintendent Gavin, since the plaintiff acknowledges that he lacked personal involvement in any of the searches alleged, and because he has only been named due to his role as Superintendent of SCI-Waymart.

In order to sustain a claim under 42 U.S.C. § 1983, "a plaintiff must show that each and every defendant was 'personal[ly] involve[d]'" in the alleged civil rights deprivation. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). Liability, therefore, cannot be predicated solely on the operation of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

The plaintiff has conceded that Superintendent Gavin was not personally involved in the cell searches or the alleged deprivation of his property, and that he named the Superintendent solely because of his role as a supervisor. (Def. SMF ¶ 58

and Ex. 4, Williams Dep. at 153:12-154:12.)  As the foregoing makes clear, this is not an available basis to impose liability under 42 U.S.C. § 1983, and summary judgment is warranted for this reason as well.

## IV.   <u>RECOMMENDATION</u>

Accordingly, for the foregoing reasons, and following a thorough review of the parties' competing briefs and the evidentiary record in this case, it is hereby recommended that the defendants' motion for summary judgment (Doc. 66.) be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23d day of October, 2014.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge